IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| CASSANDRA BENNETT-BAGORIO, et al. | CIVIL NO. 13-00071 DKW-KSC |
| Plaintiffs, | **ORDER GRANTING DEFENDANT CITY & COUNTY OF HONOLULU'S MOTION TO STRIKE AND/OR DISMISS FIRST AMENDED COMPLAINT AND DENYING THE MOTION FOR SANCTIONS** |
| vs. | |
| THE CITY AND COUNTY OF HONOLULU, et al. | |
| Defendants. | |

**ORDER GRANTING DEFENDANT CITY & COUNTY OF HONOLULU'S
MOTION TO STRIKE AND/OR DISMISS FIRST AMENDED
<u>COMPLAINT AND DENYING THE MOTION FOR SANCTIONS</u>**

<u>INTRODUCTION</u>

Before the Court is Defendant City and County of Honolulu's

("City"), on behalf of the Honolulu Police Department ("HPD") and the City and

County of Honolulu Office of Corporation Counsel ("Corp. Counsel")

(collectively, "City Defendants"), Motion to Strike and/or Dismiss the First

Amended Complaint, filed on February 20, 2013, and for Sanctions.  Plaintiffs

Cassandra Bennett-Bagorio, Shermon Dean Dowkin, and Federico Delgadillo

Martinez, Jr. (collectively, "Plaintiffs") opposed the Motion.  A hearing was held

on August 23, 2013.  After careful consideration of the supporting and opposing

memoranda, the accompanying documentation, and the relevant legal authority, the

Motion to Strike and/or Dismiss ("Motion") is hereby GRANTED.  The Motion

for Sanctions is DENIED.  Plaintiffs' First Amended Complaint is DISMISSED

WITH PREJUDICE.

## BACKGROUND

Plaintiffs initiated the present action on February 11, 2013 and filed

the operative First Amended Complaint ("1AC") on February 20, 2013.  The City

Defendants' Motion focuses on the similarity of this action to a separate action

brought by the same Plaintiffs, *Dowkin v. Honolulu Police Department, et al.*, CV

10-00087 LEK-RLP ("*Dowkin*"), which is presently stayed before District Judge

Leslie Kobayashi.  The Court will briefly recount the background of *Dowkin* and

the allegations of the 1AC in the present action.

The history of *Dowkin* is covered at length in Magistrate Judge

Puglisi's Order (1) Denying Plaintiffs' Motion for Leave to File a Fourth Amended

Complaint; (2) Denying Plaintiffs' Motion for Leave to Supplement Their Reply;

(3) Denying in Part and Taking Under Advisement in Part Plaintiffs' Motion to

Modify Rule 16 Scheduling Order; and (4) For Plaintiffs' Counsel to Show Cause

Why They Did Not Violate FRCP 11(b) ("*Dowkin* 4AC Order").  *Dowkin*, Dkt. no.

338, July 3, 2012.  Magistrate Judge Puglisi summarized the alleged conduct

leading to the claims in *Dowkin* as follows:

> On February 22, 2010, three Honolulu police officers
> brought this action against their employer, the Honolulu Police
> Department ("HPD"), and thirteen supervisors, officers, and
> HPD personnel for alleged race and gender discrimination,
> retaliation, and disparate treatment.  Dowkin, who allegedly is
> the only African-American supervisor in HPD's Regional
> Patrol Bureau District 4, First Watch ("District 4"), and
> Delgadillo, who is allegedly the only Mexican-American officer
> in District 4, claim that, between 2003 and 2008, their
> supervisors and fellow officers gave direct orders and conspired
> not to provide them protective "cover" or "backup" when
> Dowkin and Delgadillo arrested persons in the field.  Dowkin
> and Delgadillo's requests for assistance were allegedly
> "routinely ignored," as Defendants were purportedly
> "motivated by racial prejudice."  Dowkin and Delgadillo also
> allege that they were demoted to "junior officer status" after
> returning to their unit from a special duty assignment.
> On August 7, 2008, Dowkin, on behalf of himself and
> Delgadillo, delivered a written complaint, alleging race
> discrimination by HPD to Defendant Simmons, Commander of
> District 4.  After Dowkin spoke with Defendant Simmons about
> the disparate treatment, Defendant Simmons allegedly took no
> action in response to the complaint.  Plaintiffs allege that,
> although the filing of the complaint was protected activity,
> retaliation immediately commenced.
> On October 14, 2008, Bennett-Bagorio was allegedly
> summoned by HPD Human Resources to provide testimony
> regarding Dowkin and Delgadillo's race discrimination
> complaint.  Bennett-Bagorio's testimony allegedly supported
> Dowkin and Delgadillo's claims of race discrimination and
> purported failure to provide protective cover on traffic stops.
> Bennett-Bagorio alleges that, as a result of her testimony and
> her gender, Defendants retaliated against her.

*Dowkin* 4AC Order at 2–4.

In *Dowkin*, Plaintiffs filed three amended complaints, but leave was denied to file a fourth amended complaint ("4AC").  The changes to each complaint and the protracted procedural history of each amendment are discussed in the *Dowkin* 4AC Order, and the Court does not repeat that discussion here. *Dowkin* 4AC Order at 4–9.  The Court notes, however, the changes from the Third Amended Complaint to the proposed 4AC in *Dowkin,* as described by Magistrate Judge Puglisi:

> . . . Plaintiffs seek leave to file a Fourth Amended Complaint ("FAC"), in the form proposed in Exhibit A to their Motion. The FAC asserts twelve causes of action: (1) Title VII; (2) Title VI; (3) violations of the Hawaii Civil Rights Law; (4) general negligence, including negligent training and supervision; (5) IIED; (6) NIED; (7) conspiracy to interfere with civil rights; (8) civil conspiracy against rights and to tamper with witnesses; (9) conspiracy against rights (18 U.S.C. § 241); (10) tampering with a witness; (11) 42 U.S.C. § 1983; and (12) neglect to prevent conspiracy.  The FAC includes three primary changes from the TAC.  First, Plaintiffs added Deputy Chief Dave Kajihiro and Denise Tsukayama as Defendants. Second, Plaintiffs included additional allegations (¶¶ 84–125) supposedly based upon facts revealed by Defendants after Plaintiffs requested leave of court to file their TAC, as well as 37 exhibits, purportedly confirming Plaintiffs' conspiracy claims.  Finally, Plaintiffs brought four new claims against Defendants.

*Dowkin* 4AC Order at 9.  Ultimately, Judge Puglisi denied Plaintiffs leave to file the 4AC, finding, among other things, that the proposed 4AC violated Fed. R. Civ. P. 8(a) due to its prolixity (the 4AC was 134 pages long with an additional 213 pages from 37 exhibits):

4

> Plaintiffs' proposed FAC is neither short nor plain and again is
> unduly long and confusing, in addition to being argumentative,
> largely irrelevant, and conclusory. . . . Rather than
> straightforwardly stating their claims and allegations, Plaintiffs
> would burden Defendants with the onerous task of combing
> through a 347-page pleading just to prepare an answer that
> admits or denies such allegations, and to determine what claims
> and allegations must be defended or otherwise litigated.

*Dowkin* 4AC Order at 15–16.  Judge Susan Mollway[1] affirmed the *Dowkin* 4AC

Order on appeal.  *Dowkin*, Dkt. no. 393, August 27, 2012.  Plaintiffs then sought

certification to take an interlocutory appeal of the *Dowkin* 4 AC Order, which

Judge Mollway denied.  *Dowkin*, Dkt. no. 412, September 25, 2012.  On

January 17, 2013, the Court stayed *Dowkin*, pending a decision from the Hawaii

Supreme Court related to individual liability under HRS § 378-2.  *Id.*, Dkt. no. 444,

January 17, 2013.  Plaintiffs initiated this action approximately three weeks later.

As in the proposed 4AC in *Dowkin*, the 1AC in this action alleges

twelve claims:

1. Violations of Title VII of the Civil Rights Act of 1964, as
   amended, 42 U.S.C. §§ 2000e-2 *et seq.*, race and gender
   discrimination in the terms and conditions of employment (all
   Plaintiffs against City Defendants).  1AC ¶¶ 91–95.
2. Violations of Title VI of the Civil Rights Act of 1964, as
   amended, 42 U.S.C. §§ 2000d *et seq.*, race, color and national
   origin discrimination under federal assisted programs (all
   Plaintiffs against City Defendants).  1AC ¶¶ 96–101.

---

[1] *Dowkin* was assigned to Judge Mollway prior to being transferred to Judge Kobayashi on March 27, 2013.  *Dowkin*, Dkt. no. 448.

5

3. General negligence (all Plaintiffs against all Defendants), including negligent training and supervision (against all Defendants except Gratz) and negligent retention (against City Defendants, Correa, and Kealoha).  1AC ¶¶ 102–108.

4. Intentional Infliction of Emotional Distress (all Plaintiffs against all Defendants).  1AC ¶¶ 109–113.

5. Negligent Infliction of Emotional Distress (Plaintiffs Dowkin and Bennett-Bagorio against all Defendants).  1AC ¶¶ 114–120.

6. Violations of 42 U.S.C. § 1985, conspiracy to interfere with civil rights (all Plaintiffs against all Defendants).  1AC ¶¶ 121–142.

7. Civil conspiracy against rights and to tamper with witnesses (all Plaintiffs against all Defendants).  1AC ¶¶ 143–151.

8. Violations of 18 U.S.C. § 241, conspiracy against rights (all Plaintiffs against all Defendants).  1AC ¶¶ 152–156.

9. Violations of 18 U.S.C. § 1512, tampering with a witness (all Plaintiffs against all Defendants).  1AC ¶¶ 157–161.

10. Violations of 42 U.S.C. § 1983, violations of rights of equal protection, due process of law, and freedom of speech (all Plaintiffs against all Defendants). 1AC ¶¶ 162–171.

11. Violations of 42 U.S.C. § 1986, neglect and/or refusal to prevent conspiracy (all Plaintiffs against all Defendants).  1AC ¶¶ 172–179.

12. Violations of HRS § 378-2, race and gender discrimination in the terms and conditions of employment (all Plaintiffs against City Defendants).  1AC ¶¶ 180–182.

The City, HPD, Former Chief of Police Boisse Correa, Chief of Police Louis Kealoha, and Major John McEntire are Defendants both in this action and in *Dowkin*.  Like the proposed 4AC in *Dowkin*, the 1AC also asserts claims against Deputy Chief Dave Kajihiro (HPD) and Denise Tsukayama (City/HPD EEO Officer).  Unlike any complaint in *Dowkin*, the 1AC also names as Defendants:  D. Scott Dodd (Corp. Counsel), Carrie K.S. Okinaga (Corp. Counsel), Robert C.

Godbey (Corp. Counsel), Major Kerry Inouye (HPD), Lieutenant Carolyn Onaga (HPD), Lieutenant Yvonne Bolton (HPD), and Randall Gratz (HPD).[2]

As a result of discovery in the *Dowkin* litigation, Plaintiffs allege here that they became aware of an improper delay and a wrongful influence in the discrimination investigation and an alleged conspiracy "to cover-up and whitewash the discrimination and retaliation perpetrated against the Plaintiffs by all of the Defendants . . . ." 1AC ¶¶ 36, 59, 76. According to Plaintiffs' counsel, this action is "based upon acts committed by the[] defendants either after the original *Dowkin* complaint was filed or which were concealed and covered-up by the Defendants during the litigation, which acts were only subsequently discovered well after the 2010 filing date of the *Dowkin* lawsuit and even then not until the year 2012." Opp. at 1.

The City Defendants now move to strike and/or dismiss the 1AC as duplicative of the amended complaints and proposed 4AC in *Dowkin* and because the 1AC asserts claims that were previously litigated in *Dowkin*.

## STANDARD OF REVIEW

Defendants bring the Motion pursuant to Fed. R. Civ. P. 12(b)(6) and 12(f).

---

[2] There are also ten other individuals who are Defendants in *Dowkin*, but who are not Defendants here.

Rule 12(b)(6) permits a motion to dismiss for failure to state a claim upon which relief can be granted.  Pursuant to *Ashcroft v. Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  555 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Id.*  Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555).  Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not constitute a short and plain statement of the claim showing that the pleader is entitled to relief as required by Rule 8(a)(2).  *Id.* at 679.

Rule 12(f) provides that the "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  The function of a Rule 12(f) motion is to avoid the waste of time and money spent on litigating spurious issues by dispensing with those issues before trial.  *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885

(9th Cir. 1983).  Grounds for a motion to strike must be readily apparent from the face of the pleadings or from materials that may be judicially noticed.  *Wailua Assocs. v. Aetna Cas. & Sur. Co.*, 183 F.R.D. 550, 554 (D. Haw. 1998).  A matter will not be stricken from a pleading unless it is clear that it can have no possible bearing on the subject matter of the litigation.  *Id.*  Courts will generally grant a motion to strike only when the moving party has proved that the matter to be stricken could have no possible bearing on the subject matter of the litigation.  *See Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002).

Motions to strike are disfavored in the absence of prejudice.  "A motion to strike is a severe measure and it is generally viewed with disfavor [and is] not normally granted unless prejudice would result to the movant from the denial of the motion."  *United States v. 729,773 Acres of Land*, 531 F. Supp. 967, 971 (D. Haw. 1982).  In deciding a motion to strike, the Court "views the challenged pleadings in the light most favorable to the [non-moving party]."  *Wailua Assocs.*, 183 F.R.D. at 554 (citing *Hoeft v. Tucson Unified School Dist.*, 967 F.2d 1298, 1301 (9th Cir. 1992)).

Where potentially duplicative actions exist, "[a]fter weighing the equities of the case, the district court may exercise its discretion to dismiss a duplicative later-filed action, to stay that action pending resolution of the

9

previously filed action, to enjoin the parties from proceeding with it, or to consolidate both actions." *Adams v. Cal. Dep't of Health Servs.*, 487 F.3d, 684, 688 (9th Cir. 2007).

## DISCUSSION

The City Defendants move to strike and/or dismiss the 1AC on the basis that the 1AC is duplicative of the claims and issues that have been litigated or will be litigated in *Dowkin*.  Plaintiffs counter that the claims in the 1AC are distinct in time from the claims in *Dowkin* and involve an overlapping but distinct set of defendants.  For the reasons set forth below, the Court agrees with the City Defendants and dismisses the 1AC with prejudice.

## I.      Applicability of the Claim-Splitting Doctrine

As a threshold matter, the parties dispute the applicable legal standard to assess whether the 1AC is duplicative of the claims and issues in *Dowkin*.  The City Defendants assert that the "duplicative complaint" doctrine, also known as the "claim-splitting" doctrine, applies in this case.  That doctrine was laid out by the Ninth Circuit as follows:

> To determine whether a suit is duplicative, we borrow from the test for claim preclusion.  As the Supreme Court stated in *The Haytian Republic*, "the true test of the sufficiency of a plea of 'other suit pending' in another forum [i]s the legal efficacy of the first suit, when finally disposed of, as 'the thing adjudged,' regarding the matters at issue in the second suit." 154 U.S. 118, 124, 14 S.Ct. 992, 38 L.Ed. 930 (1894); *see also Hartsel Springs Ranch*, 296 F.3d at 987 n. 1 ("[I]n the claim-

splitting context, the appropriate inquiry is whether, assuming that the first suit were already final, the second suit could be precluded pursuant to claim preclusion."); *Curtis*, 226 F.3d at 139–40 ("[T]he normal claim preclusion analysis applies and the court must assess whether the second suit raises issues that should have been brought in the first."); *Davis v. Sun Oil Co.*, 148 F.3d 606, 613 (6th Cir. 1998) (per curiam) (referring to the doctrine against claim-splitting as "the 'other action pending' facet of the res judicata doctrine").

Thus, in assessing whether the second action is duplicative of the first, we examine whether the causes of action and relief sought, as well as the parties or privies to the action, are the same. *See The Haytian Republic*, 154 U.S. at 124, 14 S.Ct. 992 ("There must be the same parties, or, at least, such as represent the same interests; there must be the same rights asserted and the same relief prayed for; the relief must be founded upon the same facts, and the . . . essential basis, of the relief sought must be the same." (internal quotation marks omitted)); *Curtis*, 226 F.3d at 140 (holding that the trial court did not abuse its discretion in dismissing "*Curtis II* claims arising out of the same events as those alleged in *Curtis I*," which claims "would have been heard if plaintiffs had timely raised them"); *Serlin*, 3 F.3d at 223 ("[A] suit is duplicative if the claims, parties, and available relief do not significantly differ between the two actions." (internal quotation marks omitted)).

*Adams v. California Department of Health Services*, 487 F.3d 684, 688–89 (9th Cir. 2007).  Plaintiffs counter that the claim-splitting doctrine is inapplicable here because there has not yet been a judgment in *Dowkin* and because the conduct addressed by the 1AC arose after the initiation of the lawsuit in *Dowkin* in 2010. The Court agrees with the City Defendants that the claim-splitting doctrine applies here.

Plaintiffs rely on *Atchison, Topeka and Santa Fe Ry. Co. v. Hercules, Inc.*, 146 F.3d 1071 (9th Cir. 1998), and *Curtis v. Citibank, N.A.*, 226 F.3d 133 (2d Cir. 2000), to support their position that the claim-splitting doctrine does not apply here. *Atchison*, however, is not instructive, as it dealt with the issue of whether a plaintiff could bring claims that it chose not to assert against a third-party defendant to the first action (claims that would have been permissive cross-claims under Fed. R. Civ. P. 14) via a second, separately filed, action. 146 F.3d at 1073–74. *Atchison* turned on the proper application of Fed. R. Civ. P. 14, which is not in play here, and did not address the claim-splitting doctrine. *Id.* at 1074. In fact, in *Adams*, the Ninth Circuit clarified that an application of the claim-splitting doctrine to dismiss a second action as duplicative does not conflict with the *Atchison* decision because there is no conflicting rule of civil procedure for a proper dismissal in the claim-splitting context. *See Adams*, 487 F.3d at 688 n.1.

Plaintiffs' reliance on *Curtis* is also misplaced. Plaintiffs cite to the following comments by the Second Circuit:

> While claim preclusion bars relitigation of the events underlying a previous judgment, it does not preclude litigation of events arising after the filing of the complaint that formed the basis of the first lawsuit. The crucial date is the date the complaint was filed. The plaintiff has no continuing obligation to file amendments to the complaint to stay abreast of subsequent events; plaintiff may simply bring a later suit on those later-arising claims.

226 F.3d at 139 (internal citation omitted); *see* Opp. at 15–16.  Plaintiffs assert that

this case is "exactly the same" as *Curtis* because:

> Plaintiffs' discovery of Defendants' conspiracy to reverse
> adverse findings that admitted liability did not occur until more
> than two years after the first *Dowkin* Complaint was filed and
> five months after the *Dowkin* Third Amended Complaint was
> filed.  [Thus, i]t would not have been possible to bring the new
> causes of action in those complaints because Plaintiffs were
> unaware of the manipulated ARB outcome and the concealment
> of the original finding against Kwon.

Opp. at 17.  However, the Ninth Circuit has specifically held that "'the fact that

plaintiff was denied leave to amend does not give h[er] the right to file a second

lawsuit based on the same facts.'"  *Adams*, 487 F.3d at 688 (quoting *Hartsel*

*Springs Ranch of Colo., Inc. v. Bluegreen Corp.*, 296 F.3d 982 (10th Cir. 2002)

(alteration in original)); *see Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1025

(9th Cir. 2011) (referring to actions dismissed for claim-splitting as ones where

"plaintiff was, in effect, attempting to avoid an unfavorable prior ruling in one case

by filing essentially the same claims in a new case.").  In other words, instead of

the rigid time frame suggested by *Curtis* to determine a duplicative complaint, the

Court must analyze whether the claims in the later action should be precluded

under the test for claim preclusion.  *See id.* at 689 (citing *Hartsel*, 296 F.3d at 987

n.1, for the proposition that "in the claim-splitting context, the appropriate inquiry

is whether, assuming that the first suit were already final, the second suit could be

precluded pursuant to claim preclusion").  Accordingly, Plaintiffs arguments for

why the Court should not analyze the 1AC under the claim-splitting doctrine are unavailing.

"[I]n assessing whether the second action is duplicative of the first, [the Court] examine[s] whether the causes of action and relief sought, as well as the parties or privies to the action, are the same." *Id.* The Court addresses each of these two questions in turn and determines each in the affirmative.

## II.   Whether the Causes of Action and Relief Sought are the Same

Under the first part of the duplicative action test, "[t]o ascertain whether successive causes of action are the same, [the court must] use the transaction test, developed in the context of claim preclusion." *Id.* The transaction test asks:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*Id.* The fourth factor is "the most important" and asks whether the suits are related to the same set of facts and could conveniently be tried together. *Constantini v. Trans World Airlines*, 681 F.2d 1199, 1202 (9th Cir. 1982); *Western Sys., Inc. v. Ulloa*, 958 F.2d 864, 871 (9th Cir. 1992).

As to the first factor, although there has been no judgment in *Dowkin*

because it is presently stayed,[3] litigation of Plaintiffs' claims in this action would

interfere with the City Defendants' rights and interests that have been established

in *Dowkin*.  In *Dowkin*, Plaintiffs repeatedly argued that the City Defendants,

HPD's Human Resources Division ("HRD"), and Corp. Counsel were all involved

in a "deliberate cover-up of inculpatory evidence" and that, consequently,

Plaintiffs should be entitled to discovery of these allegations.  *Dowkin*,

Dkt. no. 344 (Plaintiffs' Motion to Extend the Limitation on the Number of

Depositions allowed by Fed. R. Civ. P. Rule 30(a)(2)(A)(i)), at 5 ¶ 9; *see, e.g.*, *id.*,

Dkt. no. 418 (Plaintiffs' appeal of Magistrate's order (ECF No. 413)), at 4–5

(describing the "complicity of the current Chief of Police [Chief Kealoha], the

EEOC Officer for the City and County of Honolulu [Denise Tsukayama], and

others [Kajihiro and McEntire] in the tampering with and suppression of evidence

concerning Defendant Kwon's discipline investigation"); *id.*, Dkt. no. 398

(Plaintiffs' reply related to their Motion for a New Scheduling Order Extending

---

[3] Plaintiffs argue that the claim-splitting doctrine only applies to previous *judgments*.  Opp. at 15. While that may be the rule in a res judicata analysis, it is not a requirement in the claim-splitting context.  "It is clear that a motion to dismiss based on improper claim-splitting need not— indeed, often cannot—wait until the first suit reaches final judgment.  Thus, in the claim-splitting context, the appropriate inquiry is whether, assuming that the first suit were already final, the second suit could be precluded pursuant to claim preclusion."  *Hartsel*, 296 F.3d at 987 n.1 (quoted in part in *Adams*, 487 F.3d at 689) (internal citations omitted); *see Long v. TRW Vehicle Safety Sys., Inc.*, 2010 WL 729465, at *5 (D. Ariz. Feb. 26, 2010) ("Final adjudication on the merits of the first action is not a concern in duplicative litigation."); *see also* 18 Wright *et al.*, *Federal Practice and Procedure* § 4406 ("In dealing with simultaneous actions on related theories, courts at times express principles of 'claim splitting' that are similar to claim preclusion, but that do not require a prior judgment.").

Discovery Deadlines), at 3–6 (same); *id.*, Dkt. no. 343 (Plaintiff's Motion for

Sanctions Against Defendants and Their Counsel), at 2 ("Corporation Counsel

knew that the records documenting Defendant Kwon's IA 08-0554 discipline were

not produced or otherwise made known to Plaintiffs because Corporation Counsel

was directly involved in the disciplinary finding reversal and in covering up the

documents' existence.").  In each of these instances, the Court in *Dowkin* rejected

Plaintiffs' arguments and allegations and concluded that there was no evidence to

support the assertions made by Plaintiffs.

Plaintiffs do not dispute that these same allegations of a cover-up

form the basis of the current 1AC.  Opp. at 2 ("[The proposed 4AC in *Dowkin*]

set[s] forth in excruciating detail (referencing and attaching actual HPD

documents) some of the key background facts and substantial bases for the new

and distinct *Bennett-Bagorio* First Amended Complaint . . . at issue here.").  Thus,

although the Defendants in *Dowkin* already litigated the need for any discovery

related to claims of a cover-up of the discrimination investigation, allowing

Plaintiffs to proceed anew here would unfairly subject Defendants to the very same

discovery that has been precluded in the context of both the *Dowkin* plaintiffs'

discovery motions and efforts to amend the pleadings.  *See Dowkin*, Dkt. no. 343

(Plaintiffs' Motion for Sanctions Against Defendants and Their Counsel), at 2

(relying and referencing the allegations and exhibits in the already denied 4AC as

the basis for warranting additional discovery on those allegations); *id.*, Dkt. no.413 (Order Denying Plaintiffs' Motion for Sanctions Against Defendants and Their Counsel), at 4–5 ("Plaintiffs present no evidence of a cover-up by Defendants or their counsel.  In fact, the record shows that Plaintiffs requested these specific documents on May 16, 2012 and were provided them two weeks later on June 1, 2012."); 1AC ¶¶ 63–65 (alleging as the basis of the claims in the 1AC the discovery abuse by Defendant that was specifically rejected by the Court in *Dowkin*).  Prosecution of this action would impair the rights and interests of Defendants that have already been established in *Dowkin*.

The fourth factor in the transaction test also instructs that the 1AC is duplicative of claims made in *Dowkin*.[4]  Even by narrowly construing the scope of the *Dowkin* action, *Central Delta Water Agency v. United States*, 306 F.3d 938, 953 (9th Cir. 2002), the Court is convinced that the two actions arise out of the same nucleus of facts.  "Whether two events are part of the same transaction or series depends on whether they are related to the same set of facts and whether they could conveniently be tried together."  *Adams*, 487 F.3d at 689.  The 1AC centers around the following alleged events:

> [I]n a unified, conscious, and concerted effort to conspire
> together in order to, and in demonstration of their intent to,
> discriminate and retaliate against the Plaintiffs, Defendants:  (1)

---

[4] This conclusion on the fourth factor instructs the determination that the second and third factors would also weigh in favor of a determination that the 1AC is duplicative.

concealed and covered-up the existence of these inculpatory records; (2) unduly delayed the completion of the investigation of the First Race Complaint for 3 years and 3 months, instead of within the 5-day period required by HPD policy; (3) failed to separate the Plaintiffs from the perpetrators; (4) failed to properly and adequately investigate the First Race Complaint; (5) whitewashed the recommendation for the suspension of Kwon; and (6) failed to impose any discipline against Kwon and/or Fernandez in the face of overwhelming evidence of their illegal discrimination, retaliation, and violations of HPD's SOC and policies.

1AC ¶ 65.   The operative complaint in *Dowkin*, the Third Amended Complaint ("3AC"), similarly alleges a conspiracy by all Defendants to approve violations of HPD Policy in discriminating against Plaintiffs and in failing to properly investigate and punish the alleged offending Defendants.  *See* 3AC ¶¶ 45, 54. Although the claims in *Dowkin* also address the original alleged discriminatory acts against Plaintiffs, both actions center on Plaintiffs' disapproval of the timing, procedure, and substance of the investigation by the City Defendants of Plaintiffs' discrimination complaints, and the allegation that the improper investigation was a conspiracy by all Defendants.  In other words, Plaintiffs seek relief in both actions from Defendants' alleged conspiracy to commit wrongful conduct surrounding the investigation of Plaintiffs' discrimination complaint.  This conclusion is further supported by the fact that Plaintiffs, as discussed above, argued several times in *Dowkin* that Corp. Counsel, the HRD, and other HPD officials all conspired to cover up and alter the discrimination investigation, asserted these same allegations

in the proposed 4AC, and readily admitted that the 4AC provides "substantial

bases" for the allegations of the 1AC here.  *See* Opp. at 2.

Plaintiffs sought to make the allegations of the 1AC part of *Dowkin*,

but were prevented from doing so.  *Dowkin* 4AC Order.  This is exactly the type of

conduct that the claim-splitting doctrine aims to preclude.  *See Adams*, 487 F.3d at

688 (dismissing a duplicative complaint because "[plaintiff] filed her present

complaint in an attempt to avoid the consequences of her own delay and to

circumvent the district court's denial of her untimely motion for leave to amend

her first complaint").

The common nucleus of facts in both suits instructs this Court that,

assuming *Dowkin* was already final, this lawsuit would be precluded pursuant to

claim preclusion.  *Id.* at 689.  The transaction test weighs heavily in favor of claim

preclusion.  *See Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987 (9th Cir.

2005).  In light of the "'the fact that [a] plaintiff [being] denied leave to amend

does not give [them] the right to file a second lawsuit based on the same facts,'"

*Adams*, 487 F.3d at 688 (quoting *Hartsel Springs Ranch of Colo., Inc. v. Bluegreen

Corp.*, 296 F.3d 982 (10th Cir. 2002), the first part of the duplicative action test is

satisfied.  The 1AC does not raise any substantially separate factual bases from

what Plaintiffs proposed to assert in the 4AC in *Dowkin*[5] or from the nucleus of events giving rise to the operative 3AC in *Dowkin*. The first part of the duplicative action test is satisfied.

## III.   Whether the Parties and Privies are the Same

Under the second part of the duplicative action test, a court must "examine whether . . . the parties or privies to the action[s] are the same." *Adams*, 487 F.3d at 689. As noted above, the 1AC adds 10 new Defendants as compared to the 3AC in *Dowkin* (8 of which are new as compared to the proposed *Dowkin* 4AC). The Court concludes, however, that each of the new Defendants is in a close relationship to the Defendants that are named in *Dowkin* and that the *Dowkin* Defendants represent the same interests as the newly named Defendants.

Where the parties are identical in both actions, the answer to the second part of the duplicative action test is simple. In *Adams*, however, the Ninth Circuit determined that even where the new complaint named several new defendants (as is the case here), the second complaint was nonetheless duplicative because the new defendants had, among other things, "a close relationship" with the defendants named in the earlier complaint.[6] 487 F.3d at 691. Specifically, the

---

[5] Additionally, the Court notes that the number and substance of the claims in the proposed *Dowkin* 4AC and the 1AC here are essentially the same, albeit with the addition and subtraction of some Defendants, all of which are privies to each other, as discussed below. The requested relief in the 3AC and the proposed 4AC in *Dowkin*, and in the 1AC here are also the same.
[6] The Court recognizes that the concept of "virtual representation" invoked by the Ninth Circuit in *Adams* has since been disapproved of in certain contexts by the Supreme Court in *Taylor v.*

Ninth Circuit found that some of the newly named defendants were in privity with

the original defendants because they were employees of the originally named

defendant employer and because the interests of the employer and newly named

defendants were aligned:

> Here, three of the new defendants . . . were employees of [the
> originally named defendant employer] at the time of the events
> described in both of [plaintiff's] complaints and thus had a
> close relationship with both [employer] and the . . . employees
> named as defendants in the first complaint. . . . Moreover, the
> interests of the three new employee-defendants are aligned with
> [the employer] because [the employer's] liability was
> predicated largely upon a finding of wrongdoing by its
> employees.

*Id.* at 692 (internal citation omitted).  The Court concludes that this same reasoning

applies to all of the newly named City and HPD employees, namely Corp. Counsel

employees D. Scott Dodd, Carrie K.S. Okinaga and Robert C. Godbey, City

Employee Denise Tsukayama, and HPD employees Major Kerry Inouye,

Lieutenant Carolyn Onaga, Lieutenant Yvonne Bolton, Randall Gratz, and Deputy

Chief Dave Kajihiro.  As stated in the 1AC, all of these individuals are employees

of the City or HPD, which is operated by the City.  1AC ¶¶ 7–8, 11–13.

Identically in *Dowkin*, the City was sued as the operating governmental entity of

HPD, and along with the City, thirteen individual defendants were named, all of

---

*Sturgell*, 553 U.S. 880, 904 (2008).  Accordingly, the Court does not rely on virtual
representation in determining that the new Defendants in the 1AC are in privity with
the Defendants in *Dowkin*.  The Court notes, however, that under an analysis of virtual
representation, all of the newly named Defendants in the 1AC would be in privity with
the *Dowkin* Defendants.

whom are/were employees of HPD and were sued because they were "acting on behalf or in furtherance of the business of HPD and/or the City & County . . ." 3AC ¶ 9; *see id.* ¶¶ 10–23 (naming each of the individual HPD Defendants and describing their role in "HPD's chain of command"); *see* 4AC ¶¶ 23–24 (proposing to add two additional Defendants, namely Denise Tsukayama, an EEO Officer for the City and HPD, and Deputy Chief Dave Kajihiro, an HPD employee).  Further, all of the new Defendants in the 1AC are named only because they are alleged to have "conspired with one or more of the other Defendants to delay and whitewash the investigation of Plaintiffs' race and gender discrimination and retaliation complaints."  1AC ¶¶ 12–13.  This is the same larger conspiracy (albeit with additional details) that is one of the primary bases for the *Dowkin* action.  *See* 3AC ¶ 54.

Accordingly, the Court determines that the 10 new Defendants named above in the 1AC are in privity with the original Defendants in *Dowkin* and the second part of the duplicative action test is satisfied.  The *Dowkin* Defendants were employed by the same local government entities (or were the same entities themselves) as the Defendants here and therefore share an identity of interest, which the *Dowkin* Defendants adequately represented.  *Adams*, 487 F.3d at 691–92; *See, e.g., Birch v. Gonzalez*, 2013 WL 1191429, at *8 (C.D. Cal. Feb. 15, 2013) (holding that for res judicata purposes, "committee members named as

defendants in this action were in privity with the Warden named as the respondent in the state habeas petitions" because "[t]hose committee members are employees of the . . . same institution that Warden Marshall—named in the state habeas petitions—oversaw.  Liability in the state habeas petition would have been predicated upon a finding of wrongdoing by the committee members."); *Barclay v. Lowe*, 131 Fed. Appx. 778, 779 (2d Cir. 2005) ("Although [plaintiff] named different defendants in the second suit than in the first, the suits are nonetheless duplicative because the defendants in the second suit are in privity with the defendants in the first suit.  All defendants are employees of [employer] and their interests are adequately represented by those in the first suit who are vested with the authority of representation."  (internal quotation marks omitted)); *Jones v. Mortgageit*, 2010 WL 330226, at *3 (N.D. Cal. Jan. 21, 2010) (dismissing a second action as duplicative because "the interests of Defendants in each action substantially overlap").

Moreover, specifically as to Corp. Counsel and the three named Corp. Counsel attorneys (D. Scott Dodd, Carrie K.S. Okinaga, and Robert C. Godbey), the *actual allegations* asserted in the 1AC against these Defendants were asserted and rejected in *Dowkin* (although Corp. Counsel and its attorneys were not named Defendants in *Dowkin*).  *Compare Dowkin*, Dkt. no. 343 (Plaintiff's Motion for Sanctions Against Defendants and Their Counsel), at 2 ("Corporation Counsel

23

knew that the records documenting Defendant Kwon's IA 08-0554 discipline were not produced or otherwise made known to Plaintiffs because Corporation Counsel was directly involved in the disciplinary finding reversal and in covering up the documents' existence."), *with* 1AC ¶ 79 ("Corporation Counsel therefore deliberately injected himself/itself into the 'investigation' of the First Race Complaint in order to secure the reversal of the ARB recommendation of disciplinary action against Defendant Kwon, because such finding and recommendation constitute an admission against the interest of the City & County and would facilitate the establishment of liability in the First Lawsuit.").  The Court finds this to be further support that the interests of Corp. Counsel and its named attorneys were shared with and adequately represented by the *Dowkin* Defendants.

## IV.   Dismissal of the 1AC

Having concluded that the claim-splitting doctrine applies to the 1AC and that the two-part test to find a duplicative complaint is satisfied, the Court hereby dismisses the 1AC with prejudice.  *See Adams*, 487 F.3d at 692–93.  In *Adams*, the Ninth Circuit noted:

> The allegedly illegal background investigation . . . occurred . . . eight months before [plaintiff] filed her first action in state court . . . .  In addition, the . . .  Investigations report upon which [plaintiff] bases her claims . . . was made available to [plaintiff] as part of the discovery materials provided by [defendant]. [Plaintiff] herself admits that she uncovered this report . . .

24

> more than two months prior to the deadline in the first action for amending the complaint.

487 F.3d at 693.  Similarly here, the alleged wrongful investigation of Plaintiffs' discrimination complaint occurred prior to the initiation of the *Dowkin* lawsuit (although Plaintiffs allege continuing wrongful conduct going past the initial filing of *Dowkin*).  Even as to the allegations that wrongful conduct related to the investigation continued while the *Dowkin* litigation was ongoing, Plaintiffs raised those issues before the Court in *Dowkin*, but no wrongful conduct was found. *Dowkin*, Dkt. no. 413 (Order Denying Plaintiffs' Motion for Sanctions Against Defendants and Their Counsel), at 4–5 ("Plaintiffs present no evidence of a cover-up by Defendants or their counsel.").

Additionally, Plaintiffs' own delay served as part of the basis for their inability to bring those claims in *Dowkin*.  *See Dowkin* 4AC Order at 17–18 ("Plaintiffs waited . . . nearly five months after they received the documents from Defendants [that served as the basis for the 4AC], to file the instant Motion and fail to provide any reason for the lengthy delay.  As a result, the Court finds that Plaintiffs were not diligent in moving to file their proposed [4AC].").  This is not a case where the 1AC is based on events occurring subsequent to *Dowkin* that could not have been part of *Dowkin*.  *See Adams*, 487 F.3d at 693.  Plaintiffs' own efforts to file the 4AC in *Dowkin* direct that conclusion.

25

Accordingly, the 1AC is dismissed with prejudice. *Id.* at 692 (affirming the dismissal with prejudice of a duplicative second action). The Court notes that, despite this dismissal, Plaintiffs are not without recourse. They may still appeal the denial of leave to file the 4AC in *Dowkin* to the Ninth Circuit once the *Dowkin* matter is concluded. *See Oxbow Energy, Inc. v. Koch Indus., Inc.*, 686 F. Supp. 278, 282 (D. Kan. 1988) ("The fact that [the judge in the first action] did not allow plaintiffs to proceed on all claims is not a persuasive reason for granting plaintiffs the right to proceed in a second action. To allow such an approach would defeat the purpose of the rule against splitting causes of action: requiring a plaintiff to address all related claims in one action and protecting the defendant from the necessity of litigating similar claims in separate actions. The proper course for plaintiffs is to appeal . . . [the] ruling [denying certain claims in the first action] to the Circuit Court of Appeals once the [first] action is concluded.").

## V.    Sanctions

The City Defendants also move for sanctions against Plaintiffs' counsel for the filing of the second lawsuit. Although the motives and conduct of Plaintiffs' counsel can be questioned, the Court is not inclined to impose sanctions at this time. The Motion for Sanctions is DENIED.

## CONCLUSION

The Court hereby GRANTS the City Defendants' Motion to Strike and/or Dismiss the First Amended Complaint Filed on February 20, 2013 and DENIES the City Defendants' Motion for Sanctions.  Plaintiffs' First Amended Complaint is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

DATED:  HONOLULU, HAWAI'I, January 28, 2014.



Derrick K. Watson
United States District Judge

---

Bennett-Bagorio, et al. v. The City and County of Honolulu, et al.; CV 13-00071 DKW/KSC; ORDER GRANTING DEFENDANT CITY & COUNTY OF HONOLULU'S MOTION TO STRIKE AND/OR DISMISS FIRST AMENDED COMPLAINT AND DENYING THE MOTION FOR SANCTIONS